UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                               Case No. 19-20719

v.                                         Hon. George Caram Steeh

JAMES MEREDITH BONNER,

    Defendant.
_____/

OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS (ECF No. 21)

Defendant James Meredith Bonner seeks to suppress evidence obtained after a search of his vehicle. The court held an evidentiary hearing on January 23, 2020, and took the matter under advisement. The parties submitted supplemental briefs. For the reasons explained below, Defendant's motion is denied.

BACKGROUND FACTS

Bonner has been charged with being a felon in possession of a firearm. On July 18, 2019, at 7:59 a.m., a woman called 911 to report that she heard a gunshot in her neighborhood. See Govt. Ex. 2; ECF No. 31 (TR) at 60. She reported that a tall black man in a white pickup truck shot his gun in a park at Mount Elliot and Zender in Detroit. The shooting

occurred at about 7:40 a.m. She said that the sound woke her up. The man left, but he had returned and was just sitting in his truck. The caller did not provide her name, but did give her phone number to the dispatcher. TR at 65-68.

The 911 call ended at about 8:02 a.m. and a marked police car was dispatched at about 8:04 a.m. According to the police notes: "FEM CLR MALE IN WHI TRK WAS SHOOTING A GUN AROUND 7:40 A M … THE PRSN LEFT AND NOW IS BACK AT THE LOC SITTING IN HIS TRK IN THE PARK … PERP IS A TALL BM." ECF No. 24-3 at PageID 75. Officers Lee Dyer and Angela Rice arrived in the area approximately ten minutes after being dispatched. TR at 13-14.

Near the intersection of Mack Avenue and Mount Elliott, about one-half block from the park, the officers observed a tall, black male driving a white pickup truck traveling in the opposite direction. *Id.* at 14, 36. Officer Dyer turned the police car around and followed the white pickup. *Id.* at 14. He activated his lights and the driver of the pickup truck pulled over in a nearby parking lot. Dyer testified that he conducted the traffic stop because "the vehicle in question matched the description of the, of the subject that was firing off gunshots in the park." *Id.* at 15.

The driver of the white pickup truck was Bonner, an African-American male. As Bonner got out of the truck, Dyer observed him to be "very tall." TR at 15. Dyer testified that Bonner got out of the car "in an aggressive manner" and did not comply with orders to return to his vehicle, so Dyer cuffed him and detained him in the back seat of the police cruiser. *Id.* at 15-16, 25-26. Dyer's testimony regarding Bonner's behavior is inconsistent with that of Officer Rice. Rice testified that Bonner exited his truck and when the officers told him to get back in with his hands up, he complied. *Id.* at 49. The court credits Rice's testimony, which is consistent with the video recorded on her bodycam. Govt. Ex. 3.

After cuffing Bonner, Officer Dyer patted him down and did not find a gun or other contraband. *Id.* at 27-28. Officer Rice asked if Bonner had a gun; he responded that he did not. *Id.* at 28. Officer Rice then searched the passenger compartment of Bonner's truck and found a handgun inside the center console. TR at 39. Rice asked Bonner whether he had a concealed pistol license; he replied that he did not. *Id.* at 39. Bonner was placed under arrest and later charged with being a felon in possession of a firearm.

## LAW AND ANALYSIS

I.  Standard of Review

Bonner seeks to suppress the gun and any other evidence obtained from the traffic stop, arguing that the police did not have reasonable suspicion to stop him or probable cause to search his truck.

Fourth Amendment protections against unreasonable searches and seizures extend to brief investigatory stops, such as traffic stops. *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir. 2012). "In order to effect a traffic stop, an officer must posses either probable cause of a civil infraction or reasonable suspicion of criminal activity." *Id.* at 763. In this case, the officers do not claim to have probable cause that Bonner committed a civil infraction. Accordingly, the reasonableness of the traffic stop is measured by the same standards for investigatory stops set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). Reasonable suspicion requires

> more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.

*Lyons*, 687 F.3d at 763 (citation omitted).  The court reviews "the totality of the circumstances, considering 'all of the information available to law enforcement officials at the time.'"  *Id.* (citation omitted).

When an investigatory stop is based upon an informant tip, "the tip must exhibit 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'"  *Robinson v. Howes*, 663 F.3d 819, 828 (6th Cir. 2011) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

During the course of a proper *Terry* stop, an officer may frisk a suspect for weapons as a protective measure.  "To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."  *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).  For their safety, the police may also search the passenger compartment of a detained suspect's vehicle, "as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous."  *Michigan v. Long*, 463 U.S. 1032, 1051 (1983).

II. Analysis

Bonner argues that the 911 call did not provide reasonable suspicion to stop his vehicle or search it.[1] He relies upon cases in which courts are wary of finding that anonymous tips, in themselves, provide reasonable suspicion for investigatory stops. *See J.L.*, 529 U.S. at 270. In *J.L.*, an anonymous caller reported to police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Officers arrived at the bus stop and saw three black males, one of whom was wearing a plaid shirt. Apart from the tip, officers had no reason to suspect them of illegal conduct. An officer approached the male wearing the plaid shirt and frisked him, finding a gun. The Florida Supreme court determined that the tip was insufficient to provide reasonable suspicion justifying a *Terry* stop and frisk. The U.S. Supreme Court agreed, noting that although the tipster accurately described a person at a particular location, the tip did not "show that the tipster has knowledge of concealed criminal activity." *J.L.*, 529 U.S. at 271-72. "The reasonable suspicion here at issue requires

---

[1] Bonner argues that officers needed probable cause to search his truck. However, officers needed only reasonable suspicion that Bonner was armed and dangerous to initiate a *Terry* stop and frisk, which includes a protective sweep of the passenger compartment of his vehicle. *See Long*, 463 U.S. at 1051.

that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.*

In contrast to *J.L.*, the Supreme Court found a tip to be sufficiently reliable to create reasonable suspicion in *Navarette v. California,* 572 U.S. 393 (2014). In *Navarette*, a 911 caller reported that a silver Ford 150 pickup, with plate number 8D94925, ran her off the road on southbound Highway 1 at mile marker 88. About fifteen minutes later, an officer heading northbound on Highway 1 passed the pickup near mile marker 69. The officer made a U-turn and pulled the truck over. The Supreme Court concluded that the traffic stop was supported by reasonable suspicion, because the "call bore adequate indicia of reliability for the officer to credit the caller's account" that she had been run off the road. *Id.* at 398.

The Court noted several indicia of reliability. First, the caller claimed "eyewitness knowledge of the alleged dangerous driving," which "lends significant support to the tip's reliability." *Id.* at 399. Second, the report was made contemporaneously, soon after perceiving a startling event. Such contemporaneous reports – similar to an excited utterance – have "long been treated as especially reliable." *Id.* Third, the caller's use of the 911 system enhanced the reliability of the tip, because such systems have "some features that allow for identifying and tracing callers, and thus

provide some safeguards against making false reports with immunity." *Id.* at 400.

The 911 call here bears similar indicia of reliability. The caller claimed to have heard a gunshot and to have observed the perpetrator, a tall black man in a white pickup truck. The call was made relatively contemporaneously – the caller stated that the man had left but had returned and was sitting in his truck at the time of the call. The emergency nature of the call also adds to a finding of reasonable suspicion, as the caller reported a shooting rather than mere gun possession. *See, e.g., Robinson*, 663 F.3d at 830; *United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009) ("The higher degree of reliability is rooted in the special reliability inherent in reports of ongoing emergencies."). Although the caller did not provide her name, she gave her phone number to the dispatcher and used the 911 system, and thus was "not completely anonymous." *See Robinson*, 663 F.3d at 827-30; *Navarette*, 572 U.S. at 400. Shortly after the call, officers observed a white pickup truck driven by a black male within one-half block of the park where the alleged shooter had been seen. *See Navarette,* 572 U.S. at 399-400 (police confirmed truck's location and direction soon after caller's report). The truck was traveling away from the park. At the time of the stop, police also confirmed that the driver was "very

tall" (Bonner is 6' 5"), adding to the reasonable suspicion that Bonner was the person described by the 911 caller.[2]

In *Robinson*, which was decided prior to *Navarette*, the court found a 911 call regarding shots fired into a specific address by a black man in a yellow car, coupled with the suspect's evasive behavior, created reasonable suspicion supporting a *Terry* stop. *Robinson*, 663 F.3d at 830-31. In this case, there is no evidence that Bonner acted suspiciously; however, the police in *Navarette* also did not observe suspicious behavior on the part of the driver. Although the *Navarette* court found it to be a "close case," it determined that the 911 call provided sufficient reasonable suspicion of a drunk driving offense, without the need for additional suspicious conduct.[3] *Navarette*, 572 U.S. at 404. *Cf. United States v. Brown*, 925 F.3d 1150 (9th Cir. 2019) (911 call did not provide reasonable suspicion for stop, when caller only alleged gun possession, which is not a crime in Washington state).

---

[2] Although this confirmation occurred after the stop was initiated, it added to the officers' reasonable suspicion that Bonner was the subject of the 911 call, and thus armed and dangerous, supporting the need for a *Terry* frisk. *See also* TR at 36 (prior to stop, driver appeared to be a "tall, black male").

[3] The Sixth Circuit in *United States v. Caruthers*, 458 F.3d 459, 465 (6th Cir. 2006) suggested in dicta that a *Terry* stop would not have been justified solely by an anonymous emergency call regarding a black man wearing a red shirt and shorts who fired a gun in the air. *Caruthers* was decided before *Navarette*, however, and did not consider whether a contemporaneous 911 call by an eyewitness added to the call's reliability.

*Navarette* supports a finding of reasonable suspicion here. In light of the totality of the circumstances, including that officers spotted the white pickup in close proximity to the park soon after being dispatched, the court finds that the 911 call was sufficiently reliable to provide officers with reasonable suspicion to stop Bonner's truck. Given the caller's report that the driver had shot his gun at a city park, the officers also reasonably suspected that Bonner was armed and dangerous, thus justifying a *Terry* frisk and protective sweep of the vehicle in order to protect officer safety. *See Long*, 463 U.S. at 1051-52. Even when a suspect is detained by officers during a stop, such protective sweeps are justified because of the possibility that the suspect may break away or, if he is not arrested, "he will be permitted to reenter his automobile, and he will then have access to any weapons inside," thus putting officer and public safety at risk. *Id.* at 1052.

## ORDER

Accordingly, because the investigatory stop, frisk, and protective sweep were supported by reasonable suspicion, IT IS HEREBY ORDERED that Bonner's motion to suppress (ECF No. 21) is DENIED.

Dated: February 20, 2020

                                                  s/George Caram Steeh
                                                  GEORGE CARAM STEEH
                                                  UNITED STATES DISTRICT JUDGE